Dewey, J.
The petitioners contend that Sally Hausen, under whom they claim the estate which they ask to have set off to them in severalty, acquired by the will of Hugh Hall one undivided sixth of the premises, which, though contingent until the marriage and birth of a child of Benjamin Hall, was afterwards a vested remainder. They further contend, that the four children of Benjamin Hall, who died before their father, also took one sixth each in like manner; that dying without issue, their father inherited their respective interests, if not conveyed by them in their lifetime ; that as to the shares of three of the children, they did thus pass to the father, as heir at law; and that upon the death of the father, he dying intestate, his two surviving children, of whom Sally Hausen was one, each became entitled to one half of the three shares. The rights of Sally Hausen, upon this hypothesis, are, one sixth by original right as devisee from Hugh Hall, and one half of three sixths of the premises, as heir at law of Benjamin Hall. The respondent relies upon a conveyance made by Sally Hausen and her husband, to Samuel Parkman, on the 15th of August, 1818; and insists that this deed passed all lhe interest of Sally Hausen in the premises, and effectually *59 operates to defeat all claim in favor of the petitioners as her heirs at law.
It is contended, that such will be the effect of this deed, because the only interest of Sarah Hausen, at the time of making the conveyance to Parkman, was a contingent remainder dependent upon her being alive at the time of the decease of her father ; or in other words, that the estate in remainder was to vest exclusively in such of the children of Benjamin Hall as should be living at the time of his decease. Therefore, it is argued, to give any effect to her deed, it must necessarily be taken to be a conveyance of her whole estate and that a contingent remainder.
If Sally Hausen took a vested interest in one sixth, and each other child of Benjamin Hall a like interest; and Sally Hausen also acquired, as heir to her father, one half of three sixths of the premises, yet it is insisted, that her deed of May, 1818, should operate as an estoppel to prevent her heirs from setting up any title through her as to such estate. The petitioners concede, that the deed of Sally Hausen passed to her grantee one sixth of the premises, but they contend that this is the whole effect of that deed, and that they may well hold, as her heirs at law, all the estate acquired by her by inheritance from her father, who died long subsequent to the date of that deed.
As decisive of the question, that the estate given by the will of Hugh Hall vested in the children of Benjamin Hall, upon his marriage and having a lawful child, or children, the petitioners refer the court to the case of Heard v. Hall, 16 Pick. 457, in which the same will came under the consideration of this court, and in which it seems to have been assumed by the counsel and sanctioned by the court, that the devise created a vested remainder in the children of Benjamin Hall. It is true, that the point controverted in that case was a different one from the question now presented; but it assumed the estate to be a vested remainder in the children of Beniamin Hall.
We have however thought proper to consider the question now raised, and the result has been entirely to confirm the *60 view taken by the court in the case of Heard v. Hall. The cases cited by the respondent* as opposed to that opinion will, we think, be found to possess some element disti lguishing them from the present devise; as some form of expression, indicating that the time when the estate should become vested was to be postponed until the death of the tenant for life. The true view of the present will is, that the decease of Benjamin Hall, the tenant for life, was not the contingency on which the share of the- children became vested estates, but the time designated when the precedent estate was to be determined, and the children of Benjamin Hall to enter into the actual possession of the estate as their own in fee-simple.
A brief reference to a few of our own decisions will show how the court has held upon this point, in cases of a devise over “ at the decease ” of the tenant for life. In the case of Dingley v. Dingley, 5 Mass. 535, a devise of land to B. for his life, and “ after his death to be equally divided among his sons,” was held to give a vested remainder to all those who were alive at the testator’s death, opening to let in after-born sons. This portion of the case has never been questioned. Some of the dicta of chief justice Parsons, as to the rule of law applicable to bequests of personal property, have been deemed erroneous and unsound.
In the case of Nash v. Cutler, 16 Pick. 491, there was a devise of this purport: “ I give to my wife the use and improvement of one third part of my real and personal estate during her natural life, and I give and devise the same at her decease to my children, their heirs and assigns.” It was held, in regard to the real estate, that this clause gave a vested remainder to all the children.
In the case of Shattuck v. Stedman, 2 Pick. 468, the testator had devised to his niece the interest of f 1000, during her *61 life, and at her decease the principal sum to be equally divided among her children. A son of the niece survived the testator but died before his mother; and it was held that he took a vested legacy.
In the case of Winslow v. Goodwin, 7 Met. 363, the devise was one seventh for the use of Sarah Winslow, and if she should die in the lifetime of her husband, then the trustee to hold such seventh part in trust for her children. This was held to be a vested estate in all the children of' Sarah Wins-low living at the death of the testator, and not solely in those children who were living at the decease of the devisee. That was also a case of a contingency quite as strong as the present, whether one of the children would take, inasmuch as it was provided in the will, that if Sarah Winslow survived her husband, she should take the estate. The contingency, how ever, was not as to the persons who were to take, but as to the happening of the event, on which the children were to take ; and they had therefore a vested interest in a contingent remainder. In addition to these cases, see 2 Pow. on Dev. (Jarm. ed.) 303, which seems fully to sustain the same position.
In the case of Olney v. Hull, 21 Pick. 311, cited by the counsel for the respondent, a devise after a life estate, “ to be equally divided among my surviving sons,” was very properly held to be limited to those sons who were living at the decease of the tenant for life ; the term “ surviving” here introduced being conclusive as to the persons who .were the object of the devise.
The case of Rich v. Waters, 22 Pick. 563, is, apparently, if not really, more in conflict with the views, which we entertain of the construction of the devise in the present case. It was, however, a case of a bequest of personal property, and was in this form: “ I also give to my wife the use of thirty shares in the Oxford bank ; said shares at her decease shall be divided equally between my heirs.” The question as to the devise arose upon a trustee process, brought to charge the executor as holding assets of one of the children of the testator; and *62 it was held, that the interest in the re\ersion was contingent, and not the subject of attachment by the trustee process. To this case, as an authoritative decision, upon the question now before us, two answers may be given : 1st. That the interest was too small and contingent, as to the time of enjoyment, to subject the executor to this process ; 2d. It was conceded by Putnam, J., in giving the opinion of the court, in that case, that had the reversionary interest been given “ to the children,” instead of “the heirs,” of the testator, the estate would have been a vested one in the children and not contingent. The case assumes, that the use of the term “ heirs ” introduces an element of uncertainty, as to the persons who were to take the reversionary interest. It is in my view proper to suggest, that this depends upon the construction of the devise as to whose “ heirs,” and at what time “ heirs ; ” for if the proper construction of that devise was “ the heirs ” of the testator, at the time of his decease, it is difficult for me to perceive what more uncertainty would arise, than if given “ to his children,” which, it was conceded, would have been a vested interest.
The English cases, to which we were referred, are not supposed to be at variance with the opinion, that the estate of the children of Benjamin Hall was a vested remainder. Wherever words are introduced, however, which indicate the intention of the testator, that the children, who are to take upon the termination of the life estate, are those who are living at the time of the decease of the tenant for life, of course, that purpose is to be carried into effect. But in a case of a naked devise to the children of A, of a reversionary interest, it must be taken to be a devise to all the children of A, living at any period after the death of the testator ; and it becomes a 'vested interest in each of such children, though liable to open to let in after-born children.
Sally Hausen, therefore, became the owner of one sixth of the premises, as a vested remainder, by the demise of Hugh Hall; subsequently her father Benjamin Hall, after the death of three of his children, as their heir at law, acquired their title to three sixths of the premises ; and the father also him *63 self dying intestate, and leaving only two heirs, of whom Sally Hausen was one, she as his heir became entitled to one half of those three sixths.
Such being the title and estate of Sally Hausen in the premises, the further inquiry is, whether she has conveyed this estate in her lifetime, or by any instrument executed by her, has barred her heirs from demanding the same as their legal inheritance.
To the first branch of this inquiry, it is conceded, that, to the extent of one sixth, she has thus conveyed her interest in the premises.
It is then to be considered, whether the deed of Sally Hausen to Samuel Parkman operates as an estoppel, to defeat her heirs at law from claiming title in the three sixths of the premises, that came to her by descent and as heir at law of her father Benjamin Hall; he having, by reason of the death of his three children without issue, and without conveying their estates, become the lawful owner thereof. It is contended by the respondent, that such is the effect of this deed. The general principle is undisputed, that a deed purporting to con • vey certain land, with covenants of warranty, will pass to the grantee any title afterwards acquired thereto by the grantor, upon the principle of estoppel. Somes v. Skinner, 3 Pick. 52, 61. But in that case, it was said, that the warranty is “ an essential feature ” in this doctrine. A deed of this estate from Sally Hausen, if she had been a feme sole, with a covenant of warranty duly binding on her, would have estopped her heirs from setting up then- title through her.
But,the application of this principle to the present case is wholly denied by the petitioners. This conveyance was made by Sally Hausen when under coverture, by herself and husband joining in the deed; and, as is contended, neither purports to convey the land, nor any further interest in the same; nor does it contain any covenants of warranty to that effect. What is the effect of such a deed as that now under consideration ? The law of Massachusetts, on this point, seems to be well settled in the two cases cited in the argument. The question arose directly in the case of Blanchard v. Brooks, 12 *64 Pick. 47. In that case, as in the present, the grantor had a certain vested interest, upon which the grant might operate and the facts show, that he had subsequently acquired a farther estate and interest in the same land. The conveyance was of “ all the right, title, and interest of the grantor in and to the undivided real estate devised,” &c.; it was held, that the deed only conveyed his vested interest; and the warranty, being only coextensive with the grant, he was not thereby estopped to claim the contingent interest, when it became vested in him by the contingency. It is said by the court, that the grant in the deed is of all his right, title and interest in the land, and not of the land itself. The warranty is of the premises, that is, of the estate granted, which was all his right, title and interest. It was equivalent to a warranty of the estate he then held, and must be confined to the estate vested. Such a conveyance passes no estate which is not then possessed by the party. Brown v. Jackson, 3 Wheat. 449.
The effect of such a conveyance as the present is settled in Comstock v. Smith, 13 Pick. 116, where it was held, that a covenant in a deed, that the grantor will “ warrant the land against all persons claiming under him,” does not estop him from setting up a title subsequently acquired. The grant was “ of all the right, title and demand in and unto the premises.” Wilde, J., in that case, strongly presents the general grounds of the doctrine of estoppel, as arising from the covenant of warranty. To allow the grantor to set up title in himself would be in violation of his covenant; and it prevents circuity of action, as the party might, if his title fails, have recourse to his covenant. In this case, it is said that the covenant applies to the interest and not to the land.
It is attempted, however, to distinguish the present case from those which have been cited, by the peculiar language of this deed in the exception or negative clause introduced into the deed, excepting therefrom any interest which Charles Hall ever had, or might then have, in the premises, if he were living. It is argued, and certainly very plausibly, that this exception can only be reconciled with the hypothesis, that the *65 grantor Sally Hausen intended to convey all the interest she might ever possess in this real estate, treating it as an estate holden by her as a contingent remainder not to vest until the death of her father; that if she supposed it was already vested in the children of Benjamin, then she could not of course hold Charles’s portion, as his interest like those of the other three children deceased would go to the father; but if treated as a contingent estate till the death of Benjamin, then if Charles had then deceased, as there might be some reason to suppose, and she alone survived, the whole remainder would vest in her at the death of her father.
This may all be so, and she might have supposed, that such was the nature of her interest. But if such were the fact, and she supposed the estate to be contingent, but erroneously, and she had then a vested interest in one sixth, and no interest contingent or vested beyond that, then a quitclaim of all her interest in the land would pass nothing beyond the interest she then held. Although this provision as to Charles Hall’s interest strongly leads us to the belief, that she was under some misapprehension as to the true nature of her interest, it is not of a character to be decisive even of her interest, and quite ineffectual to convert a deed of release of all her present interest, into a conveyance of any interest she might acquire by descent at some remote period and as to which she had then no legal estate, either vested or contingent.
We are of opinion, that this deed of release was, in its terms, only a conveyance of her estate in the land as then vested in her; that she having one sixth vested, the deed must be taken to apply to that only ; and that the covenant against all persons claiming under her did not extend beyond the grant, that is, one sixth of the land. If the words of this grant had authorized us to adopt the views of the respondent upon this point, and to consider this as a grant in terms of more than was then held by the grantor, and the covenant of general warranty had been added to the deed, a grave question would yet remain to be settled, namely, whether a covenant of warranty, thus introduced into the deed of a husband and wife, so operates against the wife as to estop her from *66 enforcing an interest in the land subsequently acquired by her by purchase or descent.
The cases of Fowler v. Shearer, 7 Mass. 14, and of Colcord v. Swan, 7 Mass. 291, are leading cases upon the subjects of conveying the lands of a feme covert, and of the origin of the New England practice of conveying the wife’s land by a deed of husband and wife. Language is used in those cases, which might seem to sanction the principle, that the wife would be estopped by the covenant of warranty, in such deed from setting up an after-acquired title. Neither of these cases, however, called for any opinion upon that point, and the language is therefore mere dicta. The first was an action of covenant broken, and it was held, that the wife was not bound by such covenant, and that an action was not maintainable against her. The other case only involved the effect of such conveyance by husband and wife of her land. The court have uniformly repudiated any liability of the wife on her covenants ; and this would seem materially to affect her liability to the bar or estoppel, which is supposed to result therefrom. The nature of this estoppel, and the foundation of it, were distinctly stated in the case of Comstock v. Smith, 13 Pick. 117.
This court have thus far certainly manifested very little disposition to estop the wife, beyond the giving of effect to her words of conveyance, as used by her, and as to which she became a legal party. Thus, in the case of Bruce v. Wood, 1 Met. 542, where she had not been introduced into the body of the deed, and her husband was named as the grantor, and she was introduced at the close in these words: “ In testimony whereof, I, the said J. B., and I, Mary B., wife of said J. B., in token that I relinquish all my right in said bargained premises, have hereunto set our hands and sealsit was held that this was no bar to a recovery by her of the land described, after the decease of her husband. So in the case of Raymond v. Holden, 2 Cush. 264, a conveyance by a husband of land held in right of the wife, to which conveyance she became a party by signing the usual clause, in token of releasing her right of dower in the land described, was held not to estop *67 ner heirs from enforcing a claim to the land. In Jackson v. Vanderheyden, 17 Johns. 167, will be found a case directly in point, that such a covenant of warranty does not estop the wife from setting up a subsequently-acquired title.
These considerations would have required us to examine more fully this point, and would seem to require us to abstain from giving any effect to the covenant of the husband, as an estoppel to the wife, in reference to a title afterwards acquired by her, if the ease had demanded a decision upon that point. But, upon the case stated, we are of opinion, that this deed of Sally Hausen does not purport to convey any thing beyond her then present interest in the land, which was her one sixth as tenant in common, and that the title subsequently acquired by her has not been conveyed by her but descended to the petitioners, as her heirs at law. This was three sixths.

 Wilds Case, 6 Co. 17; Bowdoin v. Parkman, 1 Sumn 359, 365; Ginger v. White, Willes, 348, 353; Ives v. Legge, 3 T. R. 488, n.; Goodright v. Dunham, 1 Doug. 264; Olney v. Hull, 21 Pick. 311; Rich v. Waters, 22 Pick. 563; Briden v. Hewlett, 2 My. & K. 90; Richardson v. Wheatland, 7 Met. 169; Wordsworth v. Wood, 1 H. of Lords Ca. 129, 150; Butler v. Bushnell, 3 My. & K. 232; Archer v. Jegon, 8 Sim. 446; Browr. v. Lawrence. 3 Cush. 390